# JEFFREY PIERCE *v.* COMMISSIONER OF CORRECTION
## (AC 26628)

Flynn, C. J., and Rogers and Mihalakos, Js.

Argued December 4, 2006—officially released March 13, 2007

*David J. Reich*, special public defender, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, C. J. The petitioner, Jeffrey Pierce, appeals following the habeas court's denial of his petition for certification to appeal from the judgment denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court (1) abused its discretion when it denied his motion to amend his petition for a writ of habeas corpus and (2) improperly rejected his claim that his appellate counsel and first habeas counsel provided ineffective assistance for failing to raise the issue of prosecutorial misconduct. We dismiss the appeal.

The relevant facts are set forth in the decision rendered in the petitioner's direct appeal. "On August 11, 1998, the victim drove her Plymouth Voyager minivan to the Shaw's Supermarket in Newington to purchase groceries. The victim was alone and spent approximately one-half hour inside the store. The victim then returned to her vehicle, loaded her groceries and got

in the driver's seat. The [petitioner] was hiding in the backseat of the vehicle and, upon the victim's entry into the vehicle, placed a knife to her side. The knife's blade was five to six inches in length and was beveled.

"The [petitioner] told the victim to 'do as I say and you will not be hurt.' The [petitioner] ordered the victim to drive to Glastonbury and gave her specific directions to follow. The [petitioner] directed the victim to a park on a dirt road in East Hartford. The road was blocked by a gate and the victim stopped the vehicle. The [petitioner] ordered the victim to accompany him into a wooded area. The victim refused and told the [petitioner] that she did 'not feel like getting harmed or raped by [the petitioner].' The [petitioner] stated that he did not intend to harm the victim, but he did not want the victim to see which way he would be going in the wooded area to aid in his escape. The victim suggested that she would look away while the [petitioner] fled into the wooded area. The [petitioner] 'seemed satisfied with that,' and the victim did not turn around until she was certain that the [petitioner] was gone.

"The victim then drove to the Newington police department and reported the incident. The victim described the man who perpetrated the crime as having shoulder length, dirty blond hair and wearing a baseball cap, blue jeans and a shirt. A detective prepared a composite sketch drawing based on the victim's description. Thereafter, flyers were printed based on the composite sketch drawing. The flyers were shown to members of the Newington police department, including Officer Jeannine M. Candels and her partner, Officer Timothy A. Walsh, who both recognized the sketch as depicting the [petitioner]. They then went to a motel in Newington, where they believed the [petitioner] was currently living.

"The officers interviewed the [petitioner] and he gave them a full statement in which he confessed. He signed the statement, and his version of the events matched that given by the victim. The [petitioner] also gave the officers a baseball cap that he had been wearing during the event, and the officers took a picture of the [petitioner] wearing the hat. The next day, the victim returned to the Newington police department and was shown a photographic lineup consisting of eight photographs, including the [petitioner]. The victim recognized the [petitioner] and pointed him out as the man that she had described three days earlier." *State* v. *Pierce*, 69 Conn. App. 516, 519–20, 794 A.2d 1123 (2002), rev'd in part, 269 Conn. 442, 849 A.2d 375 (2004).

Following a jury trial, the petitioner was convicted of kidnapping in the second degree in violation of General Statutes § 53a-94 and burglary in the first degree in violation of General Statutes § 53a-101. The petitioner was sentenced to a total effective term of thirty years imprisonment, execution suspended after twenty-five years, and five years probation, and he also was ordered to register as a sex offender pursuant to General Statutes § 54-254. He then filed a direct appeal, and this court affirmed the judgment of conviction but reversed as to the requirement that the petitioner register as a sex offender and remanded the case to the trial court to determine whether the petitioner had committed the offense of kidnapping for a sexual purpose. *State* v. *Pierce*, supra, 69 Conn. App. 538. The state thereafter petitioned our Supreme Court for certification to appeal, which was granted. Our Supreme Court reversed the judgment of the Appellate Court with respect to the requirement that the petitioner register as a sex offender and remanded the case with direction to reinstate the registry requirement. *State* v. *Pierce*, 269 Conn. 442, 454, 849 A.2d 375 (2004).

While awaiting the decision of our Supreme Court, the petitioner filed a petition for a writ of habeas corpus, claiming that his trial counsel, Claude Chong, had provided ineffective assistance. The court denied the petition.

The petitioner subsequently filed a second petition for a writ of habeas corpus on November 24, 2003, which was amended on November 16, 2004. In the second amended petition, the petitioner alleged in count one that attorney Scott J. Murphy, the prosecutor at trial, had engaged in misconduct. In count two, the petitioner alleged that his trial counsel had provided ineffective representation for failing to object to the improper conduct of the prosecutor and for conducting an inadequate investigation. The petitioner alleged in count three that his appellate counsel, Francis O'Reilly, had rendered ineffective assistance for not raising a prosecutorial misconduct claim in the direct appeal. In count four, the petitioner alleged that his first habeas counsel, Howard Haims, had provided ineffective assistance.

On December 8, 2004, the respondent, the commissioner of correction, filed a motion to dismiss counts one and two, and the court granted the motion with respect to count two. On that same day, the respondent also filed a return. The petitioner filed a response on December 20, 2004. Thereafter, on March 24, 2005, the petitioner filed a motion to amend his petition, which the habeas court denied on April 6, 2005.

A habeas hearing was held on April 6, 2005. The petitioner's habeas counsel introduced the following exhibits: the transcripts from the petitioner's criminal trial, the transcript from the petitioner's first habeas proceeding, the opinion rendered by this court in his direct appeal and the opinion rendered by our Supreme Court. The respondent then called the petitioner's

appellate counsel and his first habeas counsel as witnesses.

In its memorandum of decision filed April 11, 2005, the court denied the petition for a writ of habeas corpus.[1] The court found that the petitioner had failed to introduce any evidence from which the court could conclude that habeas counsel was ineffective. The court also found that appellate counsel did not render ineffective assistance when he failed to raise an unpreserved prosecutorial misconduct claim in the direct appeal. Following the denial of his petition for a writ of habeas corpus, the petitioner filed a petition for certification to appeal, which was denied. This appeal followed. Additional facts will be set forth where necessary to resolve the issues presented.

I

The petitioner first claims that the habeas court abused its discretion when it denied his motion to amend his petition.

We begin our analysis of the petitioner's claim by setting forth the applicable standard of review. "We will not disturb a habeas court's grant or denial of permission to amend a pleading in the absence of a clear abuse of discretion." *Correia* v. *Rowland*, 263 Conn. 453, 472, 820 A.2d 1009 (2003).

Pursuant to Practice Book § 23-32, "[t]he petitioner may amend the petition at any time prior to the filing of the return. Following the return, any pleading *may* be amended with leave of the judicial authority for good cause shown." (Emphasis added.) "While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made

---

[1] The court also concluded that the prosecutorial misconduct claim was procedurally defaulted, and the petitioner has not pursued the issue on appeal.

seasonably. Factors to be considered in passing on a motion to amend are the length of delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial." (Citations omitted; internal quotation marks omitted.) *Hasan* v. *Warden*, 27 Conn. App. 794, 798, 609 A.2d 1031, cert. denied, 223 Conn. 917, 614 A.2d 821(1992).

More than three months after the return was filed, the petitioner filed a motion to amend his petition for a writ of habeas corpus on March 24, 2005, alleging additional instances of prosecutorial misconduct that occurred during the prosecutor's cross-examination of the petitioner. Practice Book § 23-32 provides that after the return has been filed, the court, upon good cause shown, may permit the petitioner to file an amendment, thus leaving this determination to the sound discretion of the trial court. We conclude that the petitioner has not established that the habeas court abused its discretion by denying the petitioner's motion to amend the petition.

The petitioner filed his motion to amend his petition thirteen days before the habeas hearing on April 6, 2005. Subsequent to filing his petition for a writ of habeas corpus, the petitioner had ample time in which he could have sought permission to amend the petition, but instead, the petitioner sought permission to amend his petition less than two weeks prior to the habeas hearing. The court, in exercising its sound discretion, denied the petitioner's motion. The petitioner has failed to demonstrate a clear abuse of discretion in this ruling.

## II

We next address the ineffective assistance claim.[2] The petitioner argues that the prosecutor's remarks during closing argument constituted a violation of *State v. Singh*, 259 Conn. 693, 709–12, 793 A.2d 226 (2002),[3] and, therefore, appellate counsel and the first habeas counsel provided ineffective assistance by failing to raise this unpreserved claim of prosecutorial misconduct.[4]

The following additional facts are relevant to our discussion. At the commencement of his closing argument, the prosecutor stated: "I would suggest to you, that someone came into this room during the course

[2] In his brief, the petitioner claims that "the habeas court erred when it found that there was no merit to the issue that there was ineffective assistance of previous habeas counsel." Because the resolution of this claim involves a discussion of the same legal principles as are involved in deciding the petitioner's claim that appellate counsel provided ineffective assistance, we address both in part II.

[3] In *State v. Singh*, supra, 259 Conn. 712, our Supreme Court held, inter alia, that "closing arguments providing, in essence, that in order to find the defendant not guilty, the jury must find that witnesses had lied" are improper.

[4] The petitioner argues that, pursuant to *State v. Singh*, supra, 259 Conn. 712, the prosecutor, during closing argument, improperly (1) "ask[ed] the jury to find that if one witness is telling the truth, then the other must be lying," (2) "vouched for a state['s] witness," and (3) "appealed to the passions emotions and prejudices of the jury." (Internal quotation marks omitted.) The petitioner also alleges instances of prosecutorial misconduct, occurring during the cross-examination of the petitioner, to support his claim that his counsel rendered ineffective assistance by not raising the issue of prosecutorial misconduct. The petitioner, however, failed to include the allegedly improper questions that the prosecutor asked during the cross-examination in the proceedings. Three months after the respondent filed her return, the petitioner filed a motion to amend his petition to include these additional alleged instances of prosecutorial misconduct. The court subsequently denied the petitioner's motion to amend. See part I. In its memorandum of decision, the habeas court acknowledged that "[t]he petitioner's main thrust is that the prosecutor at his original trial engaged in prosecutorial misconduct in the manner in which he made his *closing argument* to the jury"; (emphasis added); and, accordingly, we review only those statements made during the prosecutor's closing argument.

of this trial, took that [witness] stand, raised their right hand and swore to tell the truth and flat out lied to you. Didn't tell you the truth." After highlighting the testimony of the victim and the testimony of the petitioner, the prosecutor asserted: "Is there any way to reconcile those two testimonies? I suggest to you the answer is no. One of those persons was telling you the truth, and one of those persons lied to you." The prosecutor, following his summation of the testimony of the petitioner and of the two police officers, suggested to the jury that the testimonies could not be reconciled and that "[t]he only reasonable conclusion is, one of those individuals told you the truth, and one of them lied to you." The prosecutor further asserted: "So, let's look at these individuals. Because I would suggest to you, if you believe the [petitioner's] version of what happened, then by necessity, you must find [that the victim] lied to you, that Officer Candels lied to you, and Officer Walsh lied to you, that all three of those individuals lied to you." After noting that the petitioner was a convicted felon and that the victim was a teacher, the prosecutor asked what motivation the victim would have for lying. The prosecutor also stated that the officers, by taking the witness stand, were doing "their job to investigate crime, not to commit crimes."

We first set forth our standard of review. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. Abuse of discretion is the proper standard because that is the standard to which we have held other litigants whose rights to appeal the legislature has conditioned upon the obtaining of the trial court's permission. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits."

(Citations omitted.) *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994).

To determine whether the court abused its discretion, the petitioner must demonstrate "that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Emphasis in original; internal quotation marks omitted.) Id., 616. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling . . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, 96 Conn. App. 26, 30, 898 A.2d 838, cert. denied, 280 Conn. 921, 908 A.2d 543 (2006).

"The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut. In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Nieves* v. *Commissioner of Correction*, 92 Conn. App. 534, 536, 885 A.2d 1268 (2005), cert. denied, 277 Conn. 903, 891 A.2d 2 (2006).

"The first part of the *Strickland* analysis requires the petitioner to establish that appellate counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . While an appellate advocate must provide effective assistance, he is not under an obligation to raise every conceivable issue. A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions. . . . Indeed, [e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. . . .

"To satisfy the prejudice prong, a petitioner must, thus, establish that, as a result of appellate counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. Put another way, he must establish that, because of the failure of his appellate counsel to raise a [particular] claim, there is a reasonable probability that he remains burdened by an unreliable determination of his guilt. . . . In order to prevail on a claim of ineffective assistance of appellate counsel, therefore, a habeas petitioner must show not only that his appeal would have been sustained but for counsel's deficient performance, but also that there is a reasonable probability that the trial verdict would have been different." (Citations omitted; internal quotation marks omitted.) *Vivo* v. *Commissioner of Correction*, 90 Conn. App. 167, 171–73, 876 A.2d 1216, cert. denied, 275 Conn. 925, 883 A.2d 1253 (2005).

"Because both prongs [of *Strickland*] must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . . Accordingly, a court need not determine

the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim." (Citation omitted; internal quotation marks omitted.) *Griffin* v. *Commissioner of Correction*, 98 Conn. App. 361, 365–66, 909 A.2d 60 (2006).

We conclude that the petitioner has failed to demonstrate that there is a reasonable probability that, absent the prosecutor's remarks during closing argument, the fact finder would have had a reasonable doubt respecting the guilt of the petitioner.[5] In the present case, the alleged misconduct implicates the credibility of the witnesses. However, the petitioner's underlying trial did not involve solely a credibility contest between the victim, who claimed to have been abducted, and the petitioner. Other evidence substantiated the state's allegations that the petitioner had committed the offenses of kidnapping in the first degree and burglary in the second degree. Immediately following the incident, the victim reported the incident to the police and provided the police with a description of the perpetrator. Two police officers, recognizing the petitioner as the individual portrayed in the composite sketch, interviewed the petitioner. The petitioner signed a statement, in which he gave a full confession, and the version of events in the unsuppressed confession matched the details that the victim had given to the police. The petitioner also had in his possession a baseball cap similar to the one that the victim had described as being worn by the perpetrator during the incident. After

---

[5] Because we conclude that the petitioner has failed to satisfy the prejudice prong of *Strickland*, we do not determine whether the failure to raise the issue of prosecutorial misconduct in the petitioner's direct appeal or in the petition for a writ of habeas corpus constituted deficient representation. The petitioner argues in this appeal that our Supreme Court's holding in *State* v. *Singh*, supra, 259 Conn. 709–12, is dispositive with respect to his contention that the prosecutor engaged in misconduct. We note, however, that our Supreme Court did not decide *Singh* until four months after appellate counsel argued the petitioner's direct appeal before this court.

viewing a photographic array that consisted of eight photographs, including one of the petitioner, the victim identified the petitioner as the man that she had described previously to the police.

On the basis of the foregoing, we conclude that the petitioner has failed to satisfy the prejudice prong of *Strickland.* See *Strickland* v. *Washington,* supra, 466 U.S. 687. Even if appellate counsel and the first habeas counsel had raised a prosecutorial misconduct claim in the petitioner's direct appeal and in the petition for a writ of habeas corpus, respectively, the result of the trial would not have been different, as the evidence against the petitioner was strong.

We conclude that the petitioner has failed to demonstrate that the habeas court abused its discretion by denying his petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.