******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DONALD FIELDS *v.* COMMISSIONER
## OF CORRECTION
### (AC 39674)

Lavine, Sheldon and Harper, Js.

*Syllabus*

The petitioner sought a writ of habeas corpus, claiming that his trial counsel had provided ineffective assistance by failing to advise him of a plea offer of the state for the petitioner to resolve the charges against him by pleading guilty to the crime of felony murder in exchange for a recommended sentence of twenty-five years imprisonment. At the habeas trial, the petitioner testified that he would have accepted the plea offer had trial counsel conveyed it to him. The habeas court rendered judgment denying the habeas petition, concluding that, although counsel's performance had been deficient, the petitioner failed to prove that such deficient performance had prejudiced him. In reaching its conclusion, the court first rejected the petitioner's testimony that he would have accepted the plea offer and then specifically found that he would have rejected it had trial counsel conveyed it to him. Thereafter, on the granting of certification, the petitioner appealed to this court, claiming that the habeas court erred in concluding that he had not been prejudiced by trial counsel's deficient performance. *Held* that the habeas court correctly concluded that the petitioner had failed to prove that he was prejudiced by his trial counsel's deficient performance, the petitioner having failed to establish a reasonable probability that, had trial counsel conveyed the subject plea offer to him, he would have accepted it: the habeas court's credibility determination rejecting the petitioner's testimony that he would have accepted the plea offer had counsel conveyed it to him was sufficient to support the court's conclusion that the petitioner had failed to prove prejudice, as the court found that the testimony was self-serving, that it was the only evidence in the record indicating that the petitioner would have accepted the plea offer, and that what the petitioner would do at the time of the hearing, knowing the outcome of his trial, was different from what he would have done at the time of his sentencing, and it was not the role of this court on appeal to second-guess the habeas court's credibility determination; moreover, contrary to the petitioner's assertion, the habeas court's credibility determination was distinct from its affirmative finding that the petitioner would have rejected the plea offer had it been conveyed to him.

Argued November 13, 2017—officially released February 6, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bright, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Stephen A. Lebedevitch*, assigned counsel, for the appellant (petitioner).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Eva B. Lenczewski*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Donald Fields, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus, in which he collaterally challenged his thirty year sentence for felony murder on the ground of ineffective assistance of counsel. In his petition, the petitioner claimed that his trial counsel, John Paul Carroll, rendered ineffective assistance by failing to advise him before trial of the state's offer that he resolve the charges against him by pleading guilty to felony murder in exchange for a recommended sentence of twenty-five years to serve. The habeas court rejected that claim on the ground that, although Carroll had indeed rendered constitutionally deficient performance by failing to advise the petitioner of the state's twenty-five year plea offer, the petitioner had not been prejudiced by that deficient performance. Specifically, the court concluded that he had not proved, by a fair preponderance of the evidence, that he would have accepted the offer had Carroll conveyed it to him.

On appeal, the petitioner claims that the habeas court erred in concluding that he had not been prejudiced by Carroll's constitutionally deficient performance because there was no evidence in the record tending to show that he would not have accepted the offer, and, thus, the court's finding to that effect was entirely speculative.

Although we are troubled by the facts of this case concerning Carroll's deficient performance, we must keep in mind that, in assessing the habeas court's finding as to prejudice, "[i]t is simply not the role of this court on appeal to second-guess credibility determinations made by the habeas court."[1] *Noze* v. *Commissioner of Correction*, 177 Conn. App. 874, 887,     A.3d     (2017). Accordingly, on the basis of the court's credibility based rejection of the petitioner's claim that he would have accepted the state's plea offer had it been conveyed to him, we affirm the judgment of the habeas court.

The court's memorandum of decision sets forth the following relevant facts and procedural history. "The petitioner was convicted after a jury trial of felony murder in violation of General Statutes § 53a-54c, attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (1), and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2). The trial court sentenced the petitioner to thirty years in prison, followed by twenty years of special parole. The petitioner was represented before and during trial by . . . Carroll.

"The petitioner appealed his convictions to the Supreme Court, which affirmed them. *State* v. *Fields*,

265 Conn. 184, 827 A.2d 690 (2003). . . . The petitioner was sixteen at the time of [the] crime and seventeen at the time of his trial.

"The petitioner's sole claim was tried to the [habeas] court over two days. The court heard the testimony of three witnesses: State's Attorney John Davenport, the petitioner, and [Carroll].[2] The court also received as exhibits the transcripts from the petitioner's criminal trial and sentencing, the presentence investigation report . . . delivered to the court prior to sentencing, the mittimus reflecting the petitioner's sentence, and the Supreme Court's decision from the petitioner's appeal." (Footnote added.)

At the habeas trial, the petitioner testified that he and Carroll never discussed a plea deal from the state, but that the offer of twenty-five years to serve was "something that [the petitioner] would have accepted." Throughout his cross-examination, the petitioner iterated that he never asked Carroll about pleading guilty, but that he did not know he could ask about making an offer. Moreover, in response to a question about whether the petitioner would have accepted responsibility in exchange for the plea offer of twenty-five years, the petitioner testified: "If I was offered a—a small amount of time . . . [o]r not a small amount of time, but somethin[g] and that was what I had to do . . . to get the time and accept responsibility, yeah, I would have. If I was offered the offer, I [would have done] that."

On September 6, 2016, following trial, the court denied the petition for a writ of habeas corpus. The court concluded that, although the petitioner had proved that Carroll's performance was deficient, he had not proved that such deficient performance had caused him prejudice. In reaching that conclusion, the court first rejected the petitioner's testimony that he would have accepted the plea offer of twenty-five years to serve for felony murder.[3] The court then specifically found that the petitioner would have rejected that plea offer had Carroll conveyed it to him.[4] The court thereafter granted the petitioner's timely petition for certification to appeal. This appeal followed.

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . .

"A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. Under *Strickland*, the petitioner

has the burden of demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied. . . . It is axiomatic that courts may decide against a petitioner on either prong [of the *Strickland* test], whichever is easier." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Noze* v. *Commissioner of Correction*, supra, 177 Conn. App. 883–85.

The sixth and fourteenth amendment right to the effective assistance of competent counsel is "a right that extends to the plea-bargaining process." *Lafler* v. *Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). In cases alleging ineffective assistance during the plea process, our Supreme Court has held that to prove the prejudice prong the petitioner "need establish only that (1) it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and (2) the trial judge would have conditionally accepted the plea agreement if it had been presented to the court." *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 357, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, 569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). Whether the court would have accepted the plea agreement is governed by an objective standard. Id., 360; see also *McMillion* v. *Commissioner of Correction*, 151 Conn. App. 861, 872, 97 A.3d 32 (2014) ("determination of prejudice must be made by assessing whether a reasonable trial judge would have accepted the sentence" [internal quotation marks omitted]).

On appeal, the petitioner asserts that the court erred in determining that he would not have accepted the state's plea offer had Carroll conveyed it to him. The petitioner argues that the court's credibility determination, rejecting his testimony that he would have accepted the plea had Carroll conveyed it to him, is closely intertwined with its affirmative finding that the petitioner would have rejected the plea offer. He further contends that the affirmative finding is based on pure speculation, as there is no evidence in the record to support it, and thus it is clearly erroneous. The respondent, the Commissioner of Correction, asserts that, after rejecting the petitioner's testimony that he would have accepted the plea offer had Carroll conveyed it to him, the court properly concluded that the petitioner failed to prove the prejudice prong of the *Strickland* test.[5] We disagree with the petitioner's argument that the court's affirmative finding is inseparable from its credibility determination, which led it to reject his testimony that he would have accepted the plea offer. We

thus agree with the respondent that, on the basis of the court's credibility determination, the court correctly determined that the petitioner had failed to prove the prejudice prong of the *Strickland* test.[6]

"The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given their testimony. . . . Questions of whether to believe or to disbelieve a competent witness are beyond our review." (Citation omitted; internal quotation marks omitted.) *Cole* v. *Commissioner of Correction*, 126 Conn. App. 775, 779, 12 A.3d 1065, cert. denied, 300 Conn. 937, 17 A.3d 473 (2011). "The [ultimate] conclusions reached by the [habeas] court in its decision [on a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . A reviewing court ordinarily will afford deference to those credibility determinations made by the habeas court on the basis of [the] firsthand observation of [a witness'] conduct, demeanor and attitude." (Internal quotation marks omitted.) *Noze* v. *Commissioner of Correction*, supra, 177 Conn. App. 885–86.

We conclude that the court's credibility determination is distinct from its affirmative finding that the petitioner would have rejected the plea offer for the five reasons detailed in the memorandum of decision. Our reading of the memorandum of decision indicates that the court first rejected the petitioner's testimony that he would have accepted the offer for the following reasons: (1) it was self-serving; (2) it was the only evidence in the record that the petitioner would have accepted the offer; and (3) because what the petitioner would do at the time of the hearing, knowing the outcome of his trial, was different from what he would have done at the time of his sentencing. This was sufficient to support the court's determination that the petitioner had not established prejudice.

A review of the record shows no evidence independent of the petitioner's own testimony that he would have accepted the state's plea offer had Carroll conveyed it to him. In fact, his testimony on that issue was at most equivocal. For example, in response to the court's question on that subject, he testified that if Carroll had explained the maximum penalties he was fac-

ing, he thought that he would have "ended up takin[g] the twenty-five [years] rather than . . . go to trial." Because, to reiterate, "[i]t is simply not the role of this court on appeal to second-guess credibility determinations made by the habeas court"; *Noze* v. *Commissioner of Correction*, supra, 177 Conn. App. 887; we conclude that the court properly found that the petitioner did not establish a reasonable probability that, had Carroll conveyed the offer, the petitioner would have accepted it. Thus, the court correctly determined that the petitioner failed to meet the prejudice prong of the *Strickland* test.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner was sixteen at the time of the crime and seventeen at the time of trial and sentencing. He had never been prosecuted in the adult justice system before; his only experience was in juvenile court. The petitioner was facing a potential sentence of 100 years of imprisonment, and Carroll deprived him of an opportunity to consider a plea offer of twenty-five years of imprisonment. Despite Carroll's deficient performance, we cannot provide a remedy to the petitioner, as the habeas court discredited the petitioner's testimony that he would have accepted the plea offer had Carroll presented it to him, in part because of the petitioner's self-interest in having his sentence reduced.

"Since *Chapman* v. *California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), the United States Supreme Court has repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. . . . Despite the strong interests that support the harmless-error doctrine, the [c]ourt in *Chapman* recognized that some constitutional errors require reversal without regard to the evidence in the particular case. . . . Errors that are not subject to harmless error analysis go to the fundamental fairness of the trial. . . . Structural [error] cases defy analysis by harmless error standards because the entire conduct of the trial, from beginning to end, is obviously affected. . . . Put another way, these errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 504–505, 903 A.2d 169 (2006). "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding." *United States* v. *Dominguez Benitez*, 542 U.S. 74, 81, 124 S. Ct. 2333, 159 L. Ed. 2d 157 (2004). The circumstances of this case leave us questioning whether this case presents something akin to a structural error. If Carroll had presented the petitioner with the plea offer, there may have been no need for the trial at all.

[2] Throughout Carroll's testimony, he iterated that he had only "some vague recollections of the case." In fact, Carroll testified that he could not recall the details of the plea offer or whether an offer was even made. Specifically, Carroll testified that he had "no independent recollection . . . of any offer being made" and that he did not recall whether the petitioner was interested in pleading guilty or otherwise disposing of the case without a trial. Carroll explained that he tries not to influence his clients one way or another regarding whether to accept a plea offer or go to trial, but that he thought that he had a "workable defense for the petitioner." When asked whether he explained to the petitioner the "charges, the elements, [and] the proceedings that [the petitioner] could anticipate," however, Carroll testified, "I would have to assume I did. Once again, I don't have any independent recollection of it."

[3] In its memorandum of decision, the court explained that "the petitioner has not proven by a preponderance of the evidence that he would have accepted the state's offer had it been conveyed to him. The only evidence supporting the petitioner's claim is the petitioner's testimony. The court puts little weight in that testimony because of the petitioner's obvious self-

interest in having his sentence reduced. In addition, while the petitioner, now over thirty years old, might be inclined to accept a twenty-five year sentence knowing the outcome of the trial, that is a far cry from what he would have thought as a seventeen year old prior to trial."

[4] The court detailed the following five reasons to support its affirmative finding that the petitioner would have rejected the plea offer: "First, the petitioner had every reason to believe that while he was exposed to a potential life sentence, any sentence he would receive, if convicted, would be towards the lower end of the sentencing range. He was not the shooter and had cooperated with police by telling them what happened. In fact, [Davenport] stated at the petitioner's sentencing that until he saw the petitioner's [presentence investigation report] he thought the petitioner's involvement warranted a sentence close to the minimum of twenty-five years.

"Second, [Carroll] advised the petitioner that the case was winnable. Thus, the petitioner, as a seventeen year old, would have had to weigh a certain twenty-five year sentence against the possibility of an acquittal and a likely slightly longer sentence if convicted. The court concludes that under those circumstances the petitioner would have likely rejected the state's offer.

"Third, the petitioner was not new to the criminal justice system. In addition to the charges on which he was convicted, he had two other pending charges, which the state nolled after the petitioner was sentenced. He also had an extensive juvenile [criminal] history including twelve separate dispositions between 1997 and 1999. Given his experience, it is unfathomable that he did not understand that plea negotiations regularly take place in criminal matters. Consequently, his testimony that he did not know he could ask his attorney if the state was willing to make an offer was not credible. His admitted failure to ask [Carroll] about a plea offer only buttresses the court's conclusion that he was not interested in pleading guilty.

"Fourth, while incarcerated pending trial, the petitioner received a number of disciplinary tickets for fighting, giving false information, disorderly conduct, causing a disruption, and disobeying a direct order. Knowing that such conduct would reflect badly on him if convicted, the fact that the petitioner engaged in it nonetheless shows a lack of judgment that would have led him to reject an offer from the state, even if it was in his best interest to accept it.

"Finally, even when given an opportunity at sentencing to take some responsibility for his actions and thereby do himself some good with the court, the petitioner elected not to do so. The court all but pleaded with the petitioner to say something, but the petitioner chose to remain silent. Such a position is inconsistent with the petitioner's claim that he would have willingly pleaded guilty, accepted responsibility for his role in the crimes, and agreed to a sentence of twenty-five years to serve."

[5] The respondent maintains that the court's affirmative finding is not clearly erroneous, but argues that it is distinct from the court's credibility determination. Therefore, we interpret the respondent's argument to be that on the basis of the court's credibility determination alone, we must affirm the judgment, regardless of what we conclude regarding the affirmative finding.

[6] Our conclusion is based on the court's credibility determination and the reasons provided to support it, specifically, that the petitioner's testimony is the only evidence in the record supporting his claim, the petitioner's testimony is self-serving, and what the petitioner would do now is different from what the petitioner would have done at the time of his sentencing. Because the court's rejection of the petitioner's testimony, and its rationale for doing so, are sufficient to resolve this appeal, we need not decide the viability of the court's affirmative finding and the five reasons detailed to support it.